# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

BARENTS REINSURANCE S.A.,

        Plaintiff,                Case No. 6:24-cv-00591-ACC-DCI

v.

TRUIST BANK,

        Defendant.

_____/

## AMENDED COMPLAINT

Plaintiff, Barents Reinsurance S.A. ("Barents" or "Plaintiff"), pursuant to the Court's Order [D.E. 9] files this Amended Complaint[1], and sues Defendant, Truist Bank ("Truist" or "Defendant"), upon knowledge as to its own conduct and upon information and belief as to all other matters, hereby alleges as follows:

### PRELIMINARY STATEMENT

1.      Barents lost more than $4.5 million as Truist permitted a fraudulent wire transfer from Barents's bank account to a bank account at Truist that was not owned by the intended recipient, reinsurance broker Arthur J. Gallagher & Co. (hereinafter "Gallagher").

2.      Barents had a genuine reinsurance claim that required Barents to pay $4,519,375.00 via Gallagher to the insurance company that is reinsured by Barents.

---

[1] The Amended Complaint was filed to include citizenship allegations to support federal subject matter jurisdiction pursuant to 28 U.S.C. §1332.

The claims email of Barents was compromised by an outside fraudulent actor, and the bank account details of the intended recipient were altered so that payment was sent to a bank account at Truist not owned by Gallagher.

3.    Bank of New York ("BNY"), the correspondent bank, noticed that the account number did not match the name of the intended recipient, Gallagher. As such, BNY contacted Barents concerning this issue, and Barents confirmed that the money was sent to an unintended recipient. This fraudulent transfer would have been avoided if Truist had followed security protocols to prevent the fraudulent transfer by identifying that the account number did not match the name of the intended recipient, Gallagher, as performed by BNY.

4.    Under these circumstances, Truist should make Barents whole for its damages, as Truist violated several sections of Florida's Uniform Commercial Code—Funds Transfers, as well as applicable common law. This operative section of the Florida Uniform Commercial Code provides that a bank bears the risk of loss if it receives and honors an unauthorized payment order from a customer's account.

5.    In this action, the payment order was only authorized to Gallagher's account, not the account in which Truist deposited the funds. Furthermore, Truist did not follow its own security protocol to confirm the authenticity of the payments, as the account number that received the funds did not match the name of the intended recipient. Had Truist followed these security procedures, it would have identified this attempted fraud and contacted Barents to confirm the transfer. If Truist had taken this simple step, it would have learned that this transfer was not legitimate and the product

2

of a fraudulent scheme. Nonetheless, Truist did not attempt to contact Barents and has failed to respond to Barents's inquiries concerning this transfer.

6.      To make matters worse, Truist failed to take any steps to recover these transferred funds once the underlying fraud was uncovered. Presently, the only entity associated with this transfer that will respond to Truist's inquiries regarding this fraudulent transaction is BNY. Through Barents's correspondent bank is EFG International AG ("EFG"), who in turn corresponds with BNY. EFG advised Barents that Truist will not contact Barents directly. Rather, EFG has to contact BNY, who in turn contacts Truist. Through Barents' persistence, Truist has been advised of this fraudulent transfer. Despite Barents' requests through these chains of communication to (1) advise whether the fraudulent funds can still be obtained and (2) attempt to recover these fraudulently conveyed funds, Truist has done nothing. Truist's inaction has likely rendered Barents unable to recover any of these funds from the fraudulent actor.

7.      Based on these facts, Truist is liable to Barents under Section 670.207, Florida Statutes and pursuant to common law. Accordingly, Barents therefore seeks a judgment against Truist in the amount of $4,519,375.00, which represents the full amount of the fraudulent transfer, as well as pre- and post-judgment interest.

## PARTIES, JURISDICTION, AND VENUE

8.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) as the amount in controversy exceeds $75,000, exclusive of interest

LEGAL\69539175\1

and cost, and there is complete diversity of citizenship between the parties, as described below.

9.      The Plaintiff, Barents, is a foreign corporation incorporated under the laws of the Grand Duchy of Luxembourg with its principal place of business at 26, rue Louvigny, L-1946, Luxembourg. Thus, Barents is a citizen of a foreign State (Luxembourg) for purposes of federal subject matter jurisdiction.

10.     Additionally, Barents is not lawfully admitted for permanent residence in the United States and is not domiciled in North Carolina.

11.     The defendant, Truist, is a corporation that is incorporated in North Carolina and with its principal place of business at 214 North Tryon Street, Charlotte, North Carolina 28202. Thus, the defendant is a citizen of North Carolina for purposes of federal subject matter jurisdiction.

12.     This Court has personal jurisdiction over Truist as Truist operates, conducts, engages in business in Florida through its numerous branch/office locations in Orlando, Florida, and Truist has a registered agent authorized to accept service in the State of Florida.

13.     Venue is proper in the Middle District of Florida, Orlando Division, as the Truist branch location that received and then sent the funds to the fraudster is located in Orlando, Orange County, Florida, and the acts or omissions giving rise to the claims set forth below occurred in Orange County, Florida. See 28 U.S.C. §1391.

14.     Specifically, the Truist bank location at issue is located at 749 South Westmoreland Drive, Orlando, Florida 32805.

## FACTS

*Parties*

15.     Barents is a reinsurance company established and regulated in the Grand Duchy of Luxembourg and registered with the Luxembourg Trade and Companies Register under the number B 194011. Barents provides a wide range of niche and specialty reinsurance products to property and casualty insurers.

16.     Truist is a regional, commercial bank headquartered in North Carolina. Truist offers a range of products and services through its wholesale and consumer businesses, including consumer and small business banking, commercial banking, corporate and investment banking, insurance, wealth management, payments and specialized lending businesses.

*Fraudulent Wire Transfer*

17.     On November 24, 2023, Truist permitted a wire transfer of $4,519,375.00 to be transferred to a fraudulent Truist bank account instead of the intended account maintained by Gallagher.

18.     Barents had a genuine reinsurance claim that required Barents to pay $4,519,375.00 via Gallagher to the insurance company that is reinsured by Barents.

19.     The $4,519,375.00 was supposed to be transferred to a Truist bank account where the beneficiary was Arthur J. Gallagher (UK) Ltd. Re Gallagher Re Client NST.

20.     However, prior to the payment being issued, Barents' claims email was accessed by a presently unknown fraudulent actor who altered the bank account

details, causing the funds to be sent to a bank account at Truist Bank that was not owned by the intended recipient, Gallagher.

21.    The funds were instead transferred to a Truist bank account with account number 1100022834620. **See Exhibit "A"**.

22.    Account number 1100022834620 was maintained by Defendant, Truist, at an Orlando, Florida branch.

23.    The fraudulent transfer instruction noted that the beneficiary for account number 1100022834620 was "Arthur J. Gallagher (UK) Ltd. Re Gallagher Re Client NST." **See Exhibit "A."**

24.    However, account number 1100022834620 was under the unknown fraudulent actor's name, and not under Arthur J. Gallagher (UK) Ltd. Re Gallagher Re Client NST's name, and Truist failed to verify the account number and name when conducting the transfer.

25.    BNY, the correspondent bank, noticed the account number did not match the name of the intended recipient. In turn, BNY contacted Barents, who confirmed that Truist permitted the funds to be sent to an unintended recipient.

26.    The recipient bank was Truist Bank, located at 749 South Westmoreland Drive, Orlando, Florida 32805.

*The SWIFT Communications*

27.    On November 29, 2023, BNY sent a SWIFT message to Barents' correspondent bank, EFG, headquartered in Zurich, relaying a message they received from Truist. Within the correspondence, Truist requested that Barents confirm (1) the

validity of the payment, including the beneficiary's name, (2) purpose of payment and (3) that there are no fraud concerns. Within minutes, EFG contacted Barents and sent a SWIFT message to BNY advising that they are investigating the potential fraud and in the interim, to keep the wire transfer on hold.

28.    A few minutes thereafter, Barents, not Truist at the time of transfer, confirmed that the bank details were incorrect. Indeed, Truist disseminated funds to an account whose name and account number were not the same as the name and account number of the intended recipient, Gallagher. Barents requested a recall of funds once the fraud was uncovered. The SWIFT message is as follows:

```
ATTN INVESTIGATIONS
TRUIST BANK QUOTED PLS HAVE ORG CONFIRM
VALIDITY
OF PYMT INCLUDING INTENDED BNF NAME, PURPOSE OF
PAYMENT AND THAT THERE ARE NO FRAUD
CONCERNS.CONFIRMED FRAUD - NAME DOES NOT MATCH
CLIENT PLEASE REQUEST RECALL OF FUNDS. UNQUOTE.
```

29.    That evening, EFG sent a SWIFT message demanding a payment cancellation and refund due to incorrect beneficiary details. On November 30, 2023, EFG received a SWIFT message from BNY outlining that Truist requested an indemnity in order to return any remaining funds. The purpose of the indemnity was for Truist to insulate itself from liability due to its failure to confirm the banking details, which were a product of fraud, before completing the $4,519,375.00 wire transfer.

```
ATTN INVESTIGATIONS
TRUIST BANK HAS REQUESTED AN INDEMNITY IN ORDER TO
RETURN ANY REMAINING FUNDS. WE ARE UNABLE TO
PROCEED WITH THEIR INDEMNITY REQUEST AS YOUR BANK
HAS NOT CLAIMED FRAUD. PLS URGENTLY RECONFIRM WITH
YR CLIENT IF THEY SUSPECT THIS WIRE TO BE FRAUD OR
SUSPICIOUS. THANK YOU.
```

7

30.    EFG replied to BNY's SWIFT message, which in essence was a message to Truist, with several questions, including:

(1) Have the funds been credited on the incorrect account (as you duly previously advised us that the name does not match)?

(2) If so, why?

(3) Please clarify what you understand by indemnity?

(4) As we confirmed yesterday by SWIFT via IRVTUS3N, please note that our remitter duly requested the cancellation and refund of this payment because the beneficiary details are wrong. Therefore, please return full amount back to us, same way as received, under confirmation to myself.

(5) What is the available amount?



COULD YOU PLEASE RELAY THE BELOW
MESSAGE TO THE BENEFICIARY'S BANK:
QUOTE:

1. HAVE THE FUNDS BEEN CREDITED ON
THE INCORRECT ACCOUNT (AS YOU DULY
PREVIOUSLY ADVISED US THAT THE
NAME DOES NOT MATCH) ?
2. IF SO, WHY ?
3. PLEASE CLARIFY WHAT YOU
UNDERSTAND BY INDEMNITY ?
4. AS WE CONFIRMED YESTERDAY BY
SWIFT VIA IRVTUS3N, PLEASE NOTE
THAT OUR REMIITER DULY REQUESTED
THE CANCELLATION AND REFUND OF
THIS PAYMENT BECAUSE THE
BENEFICIARY DETAILS ARE WRONG.
THEREFORE, PLEASE RETURN FULL
AMOUNT BACK TO US, SAME WAY AS
RECEIVED, UNDER CONFIRMATION TO
MYSELF. 5. WHAT IS THE AVAILABLE
AMOUNT ? UNQUOTE.

31.    In response, BNY replied that an indemnity would provide Truist permission to remove the funds out of the beneficiary's account (here, the fraudulent actor), without the fraudulent actor's permission. BNY advised that indemnities are utilized only in fraud/suspicious cases. Thereafter, Truist, through BNY, further advised that they would not accept an indemnity despite the confirmed fraud. BNY stated that it would request whether Truist would be amenable to return the funds without an indemnity.

WE CONTACTED TRUIST BANK WITH YOUR QUESTIONS. PLS
NOTE, AN INDEMNITY GIVES TRUIST PERMISSION TO TAKE
OUT OF ACCOUNT OF BENE WITHOUT BENE'S PERMISSION.
INDEMNITIES ARE ONLY FOR FRAUD/SUSPICIOUS CASES.
AND SINCE YOUR CUSTOMER CLAIMS HUMAN ERROR WE WILL
NOT BE ACCEPTING A INDEMNITY. WE WILL SEE IF
TRUIST CAN RETURN FUNDS WITHOUT AN INDEMNITY.

32.    On December 1, 2023, EFG sent a recall request to BNY, requesting BNY contact Truist to immediately block the account and any other assets the fraudulent actor may have with Truist. EFG further demanded that until Barents has received the full amount fraudulently transferred by Truist, EFG reserved the right to demand compensation from Truist for any transaction performed by the fraudulent actor.

```
FRAUDULENT WIRE
.
TOP URGENT MATTER PLEASE  -  RECALL REQUEST
.
We refer to our MT103 dated 24NOV2023, REF.
FT2332852187 FOR USD 4,519,375.- F/O ARTHUR J.
GALLAGHER (UK) LTD A/C NR. 1100022834620 WITH
SNTRUS3A.
.
Our ordering client informed us that this wire
was executed on the strength of a fraudulent
instruction.
Therefore, in order to protect our interests
and
the interests of our client, we herewith
instruct
you to request beneficiary's bank to
immediately
block the account and any other assets that the
beneficiary client may have with them, and to
no
longer process any kind of transaction
(withdrawals, payments, wire, market order,
etc)
and to return funds as a matter of urgency to
us.
From now on, and until our client has received
back the full amount fraudulently paid, we keep
the right to ask them for compensation for any
transaction done by their client on any
relationship he may have with them. We
therefore
request you to undertake the necessary actions
to
credit funds back on our a/c with you.
Please confirm your action, attn. myself.
Thanks and best regards.
.
```

33.    On even date, On December 1, 2023, Barents filed a police report outlining the fraudulent transfer. A copy of the police report is annexed hereto as **Exhibit "B"**. Also on December 1, 2023, EFG directly contacted Truist, who rejected the correspondence:

PLEASE BE ADVISED WE ARE UNABLE TO ACT ON YOUR REQUEST. PLEASE SEND ALL REQUESTS THROUGH THE CORRESPONDING BANK. WE CLOSE OUR FILE.

34.    On December 4, 2023, Barents filed a Complaint with the Federal Bureau of Investigations. A copy of the FBI IC3 Complaint referral form is annexed hereto as **Exhibit "C"**.

35.    On December 5, 2023, EFG received a SWIFT message that Truist requested a hold harmless agreement in order to return any remaining funds. Again, Truist requested this letter to insulate itself from liability for performing the fraudulent transfer and refused to otherwise provide any information to Barents or any other party.

> TRUIST BANK
> HAS REQ A HOLD HARMLESS LETTER IN ORDER TO RETURN
> ANY REMAINING FUNDS. IF YOU WISH TO PROCEED, WE
> NEED AN AUTHENTICATED MSG USING THE EXACT WORDING
> BELOW. QUOTE- RE TRN F9S231124008O200 DD 23/11/24
> FOR USD 4,519,375.00 BNY MELLON HAS UNDERTAKEN THE
> ACTIONS TO CREDIT THIS WIRE TRANSFER PER OUR
> REQUEST, AND BY YOUR ACCEPTANCE OF THE WIRE
> TRANSFER, WE
> EFG BANK AG
> AGREE TO BE BOUND BY THE FOLLOWING
> INDEMNIFICATION. IN CONSIDERATION OF BNY MELLONS
> INDEMNIFICATION OF
> TRUIST BANK
> WHICH IS MADE IN ORDER TO ASSIST US IN OBTAINING
> FUNDS RELATING TO THE WIRE TRANSFER, WE HEREBY
> AGREE TO INDEMNIFY, DEFEND AND HOLD HARMLESS BNY
> MELLON AND BNY MELLONS OFFICERS, DIRECTORS,
> EMPLOYEES, AND AGENTS FROM AND AGAINST ANY AND ALL
> LOSSES, DAMAGES, ACTIONS, CLAIMS (INCLUDING, BUT
> NOT LIMITED TO, THIRD PARTY CLAIMS), SUITS,
> JUDGEMENTS, OBLIGATIONS, PENALTIES, DEMANDS,
> PROCEEDINGS, COSTS, EXPENSES OR LIABILITIES
> INCLUDING, BUT NOT LIMITED TO, ATTORNEY'S FEES,
> AND EXPENSES OF ANY NATURE, AND COURT COSTS PAID,
> SUFFERED OR INCURRED, THAT MAY ARISE DIRECTLY OR
> INDIRECTLY OUT OF OR IN CONNECTION WITH BNY
> MELLONS INDEMNIFICATION OF
> TRUIST BANK
> WITH REGARD TO THE WIRE TRANSFER AND ANY AND ALL
> STEPS TAKEN BY BNY MELLON TO OBTAIN FOR US THE
> AMOUNT OF THE WIRE TRANSFER. UNQUOTE

36.    On even date, EFG replied, requesting confirmation that the full $4,519,375.00 remained on hold as per their November 29, 2023 SWIFT message. If the instruction was not followed, EFG demanded an explanation in detail as to why the funds were not held. EFG further demanded confirmation from Truist, through BNY, as to the exact amount of funds remaining with Truist.

"Please confirm that the amount of USD 4'519'375 has indeed remained on hold as per our instruction dated 29.11.2023 (Message E196231129AFGEFF).  If this instruction was not carried out, please explain in detail why and please obtain confirmation from the BENEFICIARY'S BANK as to the exact amount of funds remaining with the BENEFICIARY'S BANK to this date."

11

37.    On December 8, 2023, BNY sent the same SWIFT message as outlined in ¶ 25, stating that Truist requires a hold harmless agreement in order to return any remaining funds. Truist continued to disregard Barents' demands, through EFG, to provide an explanation in detail as to why the funds were not held and confirmation as to the exact amount of funds remaining with Truist.

38.    On even date, EFG sent a follow-up to their December 5, 2023 request:

2ND REQUEST

PLEASE URGENTLY CONFIRM THAT THE
AMOUNT OF USD 4'519'375 HAS INDEED
REMAINED ON HOLD AS PER OUR
INSTRUCTION DATED 29.11.2023
AS PER OUR BELOW MESSAGE.
IF THIS INSTRUCTION WAS NOT
CARRIED OUT, PLEASE URGENTLY
OBTAIN CONFIRMATION FROM THE
BENEFICIARY'S BANK AS TO THE EXACT
AMOUNT OF FUNDS REMAINING WITH THE
BENEFICIARY'S BANK TO DATE.
REQUEST YOUR URGENT AND IMMEDIATE
RESPONSE TODAY.

PLEASE URGENTLY ONFIRM YOUR ACTION.

39.    To date, Truist continues to refuse direct communication with both Barents and EFG and has similarly failed to answer any of the questions posed above through BNY. Rather, Truist maintained their demand for a hold harmless agreement in order to provide any information whatsoever.

40.    Overall, Truist not only completed a wire transfer of over $4.5 million to a fraudulent bank account, whose account name and number differed from the account name and number of the intended recipient, Gallagher, but also subsequently failed to mitigate any potential damages by not holding the remaining funds (if any exist) once the fraud was uncovered and reported. Of note, despite the fraudulent actor's account

having a separate name and number from Gallagher's account, Truist failed to uncover the fraud and executed the wire transfer to the detriment of Barents.

41.    Plaintiff satisfied all actions or conditions precedent to bringing this action.

## COUNT I – VIOLATION OF FLA. STAT. §670.207

42.    Plaintiff incorporates and re-alleges each and every allegation contained in paragraphs 1-41 as if fully set forth herein.

43.    Florida's Uniform Commercial Code (UCC), section 670.207(2)(a)-(b), Florida Statutes, provides in relevant part as follows:

> (2)   If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> > (a)   Except as otherwise provided in subsection (3), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.
> >
> > (b)   If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

44.    In the fraudulent wire instructions provided to Truist, the specified account name (Arthur J. Gallagher (UK) Ltd. Re Gallagher Re Client NST) and account number (1100022834620) refer to different persons and/or entities.

45.     During the process of the wire transfer, Truist, through its employees and representatives, had actual or constructive knowledge of the name and bank account discrepancy as EFG sent a SWIFT message to Truist demanding a payment cancellation and refund due to incorrect beneficiary details.

46.     Also, Truist sent a SWIFT communication where it requested that Barents verify the purpose of the payment, "that there are no fraud concerns" and where Truist states "NAME DOES NOT MATCH CLIENT." (emphasis added). (see Swift Communication below).



```
ATTN INVESTIGATIONS
TRUIST BANK QUOTED PLS HAVE ORG CONFIRM
VALIDITY
OF PYMT INCLUDING INTENDED BNF NAME, PURPOSE OF
PAYMENT AND THAT THERE ARE NO FRAUD
CONCERNS.CONFIRMED FRAUD - NAME DOES NOT MATCH
CLIENT PLEASE REQUEST RECALL OF FUNDS. UNQUOTE.
```

47.     That same evening, EFG sent a SWIFT message to Truist demanding a payment cancellation and refund due to incorrect beneficiary details.

48.     Thus, Truist had actual knowledge and received notification of the discrepancy in the name of the beneficiary given that it was informed of the discrepancy via a SWIFT message and because Truist itself advised that the "name does not match client".

49.     Therefore, pursuant to 670.207(2)(a), Truist, as the beneficiary's bank, did know that the name and account number referred to different persons. Thus, Truist was not able to rely on the account number as the proper identification of the beneficiary of the order.

50.     Additionally, Truist's failure to discover and communicate the fraud constitutes a failure to exercise due diligence and failure by Truist to have proper security procedures to detect fraudulent transactions.

51.     Here, for instance, there were obvious facts that should have signaled to Truist that the wire request was fraudulent, including but not limited to the fact that: (a) the wire transfer request shows that the beneficiary was an entity from the United Kingdom—Arthur J. Gallagher (UK) Ltd. Re Gallagher Re Client NST—but the address on the wire form is for a residential apartment in Kissimmee, Florida; and (2) the wire transfer request had basic typos and mistakes such as incorrectly spelling "United state" rather than "United States" in the address for the bank. These types of mistakes are indicative of fraudulent requests and Truist's security measures and due diligence should not have accepted the wire request. ***See Exhibit A***.

52.     Further, having opened account number 1100022834620, Defendant Truist had knowledge as defined in Florida Statute §671.209 of the information contained in its own records and that bank account number 1100022834620 referred to a person or entity other than Arthur J. Gallagher (UK) Ltd. Re Gallagher Re Client NST.

53.     Defendant Truist was therefore required by Florida Statute §670.207(2)(b) to reject rather than accept the payment order and was not permitted to credit the $4,519,375.00 to the fraudulent actor's account.

54.     As a direct and proximate result of the Truist's violation of the provisions of Florida Statute §670.207, Plaintiff has been damaged in the sum of $4,519,375.00, plus interest from November 29, 2023, at the legal rate of interest under Florida law.

WHEREFORE, Plaintiff demands judgment in its favor, including the award of damages, attorneys' fees, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## COUNT II – VIOLATION OF FLA. STAT. §670.211

55.     Plaintiff incorporates and re-alleges each and every allegation contained in paragraphs 1-41 as if fully set forth herein.

56.     Florida's Uniform Commercial Code (UCC), section 670.211, Florida Statutes, provides in relevant part as follows:

(3)  After a payment order has been accepted, cancellation or amendment of the order is not effective unless the receiving bank agrees or a funds-transfer system rule allows cancellation or amendment without agreement of the bank.

(b)  With respect to a payment order accepted by the beneficiary's bank, cancellation or amendment is not effective unless the order was issued in execution of an unauthorized payment order, or because of a mistake by a sender in the funds transfer which resulted in the issuance of a payment order that is a duplicate of a payment order previously issued by the sender, that orders payment to a beneficiary not entitled to receive payment from the originator, or that orders payment in an amount greater than the amount the beneficiary was entitled to receive from the originator. If the payment order is canceled or amended, the beneficiary's bank is entitled to recover from the beneficiary any amount paid to the beneficiary to the extent allowed by the law governing mistake and restitution.

57.    The fraudulent wire instructions provided to Truist specified that the account name was Arthur J. Gallagher (UK) Ltd. Re Gallagher Re Client NST and the account number was 1100022834620.

58.    Here, Truist, as the beneficiary's bank, accepted the fraudulent wire transfer request despite the clear indications that the request was fraudulent.

59.    During the process of the wire transfer, Truist, through its employees and representatives, had actual knowledge of the name and bank account discrepancy and the fraud.

60.    Importantly, Truist sent a SWIFT communication where it requested that Barents verify the validity of the payment, the purpose of the payment and "that there are no fraud concerns." (see below).

```
ATTN INVESTIGATIONS
TRUIST BANK QUOTED PLS HAVE ORG CONFIRM
VALIDITY
OF PYMT INCLUDING INTENDED BNF NAME, PURPOSE OF
PAYMENT AND THAT THERE ARE NO FRAUD
CONCERNS.CONFIRMED FRAUD - NAME DOES NOT MATCH
CLIENT PLEASE REQUEST RECALL OF FUNDS. UNQUOTE.
```

61.    That same evening, EFG, on behalf of Barents, sent a SWIFT message to Truist demanding a payment cancellation and refund due to incorrect beneficiary details and possible fraud. Thus, Truist had actual knowledge and received notification of the discrepancy given that it was informed of the discrepancy via a SWIFT message.

62.    Here, the cancellation or amendment by Barents was effective because Barents informed Truist that the order was issued in execution of an unauthorized

payment order and because the request orders payment to a beneficiary not entitled to receive payment from the originator.

63.     Furthermore, Section 670.211(5) provides that "[a] canceled payment order cannot be accepted…"

64.     Thus, Truist should not have accepted and much less executed the fraudulent wire request given that Barents, through EFG and/or BNY, demanded that Truist cancel the wire because it was an unauthorized payment and because it was to a beneficiary (the fraudulent actor) not entitled to receive payment from the originator (Barents).

65.     As a direct and proximate result of the Truist's violation of the provisions of Florida Statute §670.211, Plaintiff has been damaged in the sum of $4,519,375.00, plus interest from November 29, 2023, at the legal rate of interest under Florida law.

66.     WHEREFORE, Plaintiff demands judgment in its favor, including the award of damages, attorneys' fees, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## COUNT III – NEGLIGENCE

67.     Plaintiff incorporates and re-alleges each and every allegation contained in paragraphs 1-41 as if fully set forth herein.

68.     After the Defendant sent the funds to the fraudulent actor's account and after learning of the fraud, Defendant, Truist, through its representatives, had a duty to the Plaintiff to:

18

a.  Provide a commercially reasonable method of providing security against an unauthorized payment order;

b.  To act with due care to address Plaintiff's requests and concerns;

c.  Immediately block the account and any other assets the fraudulent actor may have with Truist after being notified of the fraudulent request and transfer;

d.  Place the entire sum of $4,519,375.00 in the fraudulent actor's account on hold after the funds had been sent to the fraudulent actor's account;

e.  Remove the funds out of the beneficiary's account (here, the fraudulent actor), without the fraudulent actor's permission;

f.  Return and refund the full amount of the transfer back to the Plaintiff;

g.  Provide an explanation in detail as to why the funds were not held and confirmation as to the exact amount of funds remaining with Truist;

h.  Investigate the fraud, after it learned the transfer request was fraudulent, and take any steps to prevent and/or mitigate the fraud; and

i.  Assist the Plaintiff and EFG with the investigation of the fraudulent transfer and cooperate with the Plaintiff and EFG to recover the funds.

69.    After the Defendant sent the funds to the fraudulent actor's account and after learning of the fraudulent request, Defendant breached its duty to Plaintiff through various acts or omissions, including but not limited to:

a.  Provide a commercially reasonable method of providing security against unauthorized payment order;

b. Act with due care to address Plaintiff's requests and concerns;

c. Immediately block the account and any other assets the fraudulent actor may have with Truist after being notified of the fraudulent request and transfer;

d. Place the entire sum of $4,519,375.00 in the fraudulent actor's account on hold after the funds had been sent to the fraudulent actor's account;

e. Remove the funds out of the beneficiary's account (here, the fraudulent actor), without the fraudulent actor's permission;

f. Return and refunding the full amount of the transfer back to the Plaintiff;

g. Provide an explanation in detail as to why the funds were not held and confirmation as to the exact amount of funds remaining with Truist;

h. Investigate the fraud, after it learned the transfer request was fraudulent, and take any steps to prevent and/or mitigate the fraud; and

i. Assist the Plaintiff and EFG with the investigation of the fraudulent transfer and cooperate with the Plaintiff and EFG to recover the funds.

70. Truist also breached its duties to Barents by being negligent with regard to the opening of bank accounts, by deviating from its standard account opening procedures, by failing to conduct regular checks on bank accounts, such as the fraudulent actor's account to prevent fraud, and by failing to notice inconsistencies on documentation.

71. As a direct and proximate cause of Defendant's breaches, Plaintiff has been damaged in the amount of $4,519,375.00.

LEGAL\69539175\1

WHEREFORE, Plaintiff demands judgment in its favor, including the award of damages, attorneys' fees, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## PRAYER FOR RELIEF AND REQUEST FOR JURY TRIAL

**WHEREFORE**, Barents respectfully requests that the Court enter judgment in Barents's favor and against Truist, Barents also requests a trial by jury on all issues so triable, and requests that the Court award the following relief to Barents:

(a)    Damages in an amount to be proven at trial, but in any event not less than $4,519,375.00;

(b)    An Order awarding Barents pre- and post-judgment interest, as well as its costs and attorneys' fees; and

(c)    Such other and further relief to Barents as the Court deems just and proper.

Dated this 29th day of March, 2024

Respectfully submitted,

**COZEN O'CONNOR**

By:    _/s/ Juan P. Garrido_____
Juan P. Garrido, Esq.
Florida Bar No. 118678
Joel M. Maxwell (*Pro Hac Vice* Forthcoming)
200 South Biscayne Blvd., Ste. 3000
Miami, Florida 33131
Telephone: (305) 397-0826
Primary email: jgarrido@cozen.com
                     jmaxwell@cozen.com
Secondary email: LKrtausch@cozen.com
*Attorneys for Plaintiff, Barents Resinsurance S.A.*